## No. 17,043.

MANION ET AL. *v.* STEPHENS.
(261 P. [2d] 1021)

Decided September 14, 1953.    Rehearing denied October 26, 1953.

Mr. W. E. McCARTHY, for plaintiffs in error.

Messrs. NEWCOMER & DOUGLASS, Mr. FRANK A. BUCHANAN, for defendant in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

Defendants in error, as plaintiff, on February 18, 1952, filed a complaint alleging in substance that, in some fashion unknown to him, 415 turkeys belonging to him became a part of defendants' flock of turkeys and were sold by defendants, for which he sought damages in the sum of approximately $3600. An answer, which was a substantial denial, was filed and the matter tried to a jury, which, under full and proper instructions, returned its verdict in favor of plaintiff and against defendants in the amount of $3444.04, on which judgment was entered on October 2, 1952. On the specifications of errors assigned, we are asked to reverse this judgment.

It appears that plaintiff and defendants were neighbors in Boulder county, each engaged in the business of raising and marketing turkeys from their respective adjoining ranges. Plaintiff alleges that about June 1, 1951, he purchased 5,100 turkey poults for feeding for the fall market, and about the same time defendants purchased approximately 4,500, but not more than 4,590, turkey poults; that the ranges and pens of the respective parties were never more than one-half mile apart; that plaintiff kept an accurate record of the death and other losses of his turkeys, which showed that he would have 4,464 matured turkeys ready for sale, but when he made the sale on December 6, 1951, he had only 4,049 turkeys in his pens. That on or about that date defendants sold approximately 500 more turkeys than their record indicated that they had in their pens; that in some fashion unknown to plaintiff his missing 415 turkeys became a part of defendants' flock, or in some way became accredited to defendants' account at Longmont Turkey Processors, Inc.; that the 415 turkeys were then marketable for $3,632.11; and that defendants were thereby unjustly enriched at the plaintiff's damage in that amount.

On discovering his shortage and defendants' overage, plaintiff filed a criminal complaint against defendant Hubert Manion for larceny; representatives of the sheriff's office at Boulder county took defendant Hubert

Manion into custody late in the afternoon; while he was in the sheriff's office that evening, representatives of the sheriff caused plaintiff to come in; plaintiff and defendant Hubert Manion discussed the matter of the shortage and overage, which had been summarily investigated by the sheriff's representatives, and as a result of the talk between plaintiff and defendant, a written agreement was prepared and signed by defendant, which appears in the record as Exhibit V and is as follows:

"Agreement          December 10, 1951

"I, Hubert Manion, in oreder [order] to make up the shortage in the turkey flock of John H. Stephens and the overage in my flock hereby agree to order and authorize General Mills, Inc. to deduct from the net proceeds of any money due me from General Mills, Inc. and pay to John H. Stephens an amount equal to 8611 pounds of turkey (based on 415 birds at 20.75 pounds average weight per bird) said price based on New York dressed market for December 13, 14, and 17.

"Hubert Manion

"Witnessed:

Donald C. Moore

John H. Stephens"

Thereupon plaintiff advised the sheriff and the district attorney that he did not wish "to testify or prosecute" and the district attorney reluctantly moved the court for dismissal of the complaint on December 11, 1951, which motion was granted. Defendant failed to comply with his agreement to make up the shortage and this action resulted. Without a detailing of the evidence, it appears that the missing turkeys belonging to plaintiff could have become a part of defendants' flock at different times and for different reasons, namely: At times when plaintiff Stephens was away from the immediate care of his turkeys on the range, although he slept there during the night; on the night of December 1, an unlighted truck was observed and was caused to speed away from the Stephens range, which could have dumped turkeys

that might have been taken, onto the Manion range; on one night when plaintiff Stephens was away, a man he had hired to watch the turkeys failed to appear; about two weeks prior to December 10, defendant Manion returned to his range from a trip to Nederland and found a large group of approximately 500 turkeys outside his range gate and drove them into his flock, believing them to be his own turkeys, but Manion stated to the undersheriff that these turkeys must have belonged to plaintiff Stephens; and finally, that in the loading and shipping process, one truck may have loaded some of Stephens' turkeys and misdelivered them to the credit of Manion.

Fairly accurate records were kept by both parties of their daily losses from death of turkeys and other causes, and these records disclose the shortage claimed by plaintiff Stephens, and the overage sold by Manion. Manion did not positively confirm the various figures contained in these statements; made no direct denial at all; but admitted selling the approximate number of turkeys here involved, which was more than he could have had available for sale.

It is unfortunate that the integrity of these parties, who had been good neighbors, and from aught the record shows, law-abiding and respected citizens, is involved in this peculiar set of circumstances. The evidence does not sustain any reflection upon defendants in any intentional acquiring of the turkeys that were missing from plaintiff's flock and sold by defendants; however, the evidence is most conclusive that in the mixup, plaintiff Stephens was short the number of turkeys claimed, and there was approximately that number of overage in defendants' flock, for which defendants received the benefit and were thereby unduly enriched, and for which they should not, in fair dealing, make any protest as to having received money for property not belonging to them, however unwittingly it might have been acquired.

Error is assigned to the admission of the above quoted agreement in evidence because, it is claimed, that such

amounted to the compounding of a felony and was highly prejudicial and inadmissible. It apparently was not so considered by the then able counsel for defendant, because no objection on that ground was made at the trial or in the original motion for a new trial. Nevertheless, we do not find anything in the record which indicates that said agreement, and the circumstances and conversation surrounding it, would justify its being so classified. It developed that at the time of the making of the agreement, that there was grave doubt, if not a total absence, of any evidence that would point to, or establish, criminal guilt on the part of defendants. In fairness to both parties, it may be said that if such a conversation had been had earlier, a criminal complaint would not have been filed. Under our statute, the party injured has a right to receive the goods in question or have compensation therefor from the party accused, and the promise to not prosecute or reward·for not prosecuting, must be distinctly made—which does not here appear—with an intent to stifle prosecution of a public offence. There is no admission, or anything pointing toward an admission of larceny of the turkeys, and it is made abundantly clear that in some unknown way defendants were in possession of more turkeys than the record of their flock would indicate, and they so admitted. Defendants presented no substantial support for their position, but did display an evasiveness and failure to remember, all of which were matters in the province of the jury and apparently so considered by it. We find that this case was fully and fairly presented to the jury, from the following, which is a part of instruction No. 3: "In this case if you find from a preponderance of the evidence that the defendants came into possession of and sold missing turkeys belonging to the plaintiff, then and in such case that would be a conversion of plaintiff's property by the defendants. The motive with which a defendant acts, and whether with or without ill will or malice, is immaterial in an action for conversion. Action for conver-

sion will lie even though the act or acts upon which the action is based are done in good faith, sincerely, innocently, inadvertently or by mistake."

There was no objection to this instruction and there was no instruction embracing any theory of an action on the contract and rightfully so, because of the very nature of the case as pleaded and developed by the testimony. This observation is made because plaintiff in error contends that recovery was had by plaintiff below on an illegal contract. Call it what you may, the outcome is the same, because defendants obtained money for property admittedly not their own, and generally conceded to be possibly the property of plaintiff; therefore, by the judgment, defendants are not deprived of anything for which they could make a just claim.

The case was well and fairly tried without any error, at least none prejudicial. The overwhelming weight of the testimony clearly justifies and supports the verdict and the judgment based thereon, and it therefore should be affirmed.

The judgment is affirmed.